IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

EDELIEL ESANULSANCHAZE RAINEY,

     Defendant

2:24-CR-083-Z-BR

### SANCTION ORDER

On March 24, 2025, the Court ordered Defense Counsel Antoinette Harris ("Ms. Harris") to show good cause why she failed to comply with the deadlines set forth in the Court's Amended Scheduling Order. ECF No. 54. Ms. Harris filed her response to the Court's Order on March 27, 2025. ECF No. 57. For the following reasons, the Court **FINDS** that Ms. Harris has failed to demonstrate good cause for her failure to comply with the Court's Order and hereby **SANCTIONS** Ms. Harris.

#### BACKGROUND

On February 24, 2024, Ms. Harris filed a Motion to Suppress on behalf of Defendant. ECF No. 30. The Court set a hearing to more fully consider the Motion. ECF No. 32. Prior to the hearing, Ms. Harris sought informal leave of Court to file a reply brief that exceeded the page limit specified in the Local Rules. *See* ECF No. 36. The Court granted leave to exceed the page limit but reminded *both* Parties to comply with all requirements set by the Local Rules unless the Court granted leave to do otherwise. *See id.* Ms. Harris then filed Defendant's reply. ECF No. 37.

In that reply brief, Ms. Harris inexplicably impugned the Court's impartiality, arguing that the Government exceeded the page limit in its response brief "without seeking leave (whether formal or informal), while the Defendant was required to adhere strictly to

1

the rule and request permission." ECF No. 37 at 21. Ms. Harris then inappropriately stated that "[t]his disparity creates the appearance of favoritism, allowing the Government to bypass requirements imposed on accused citizens." *Id.* at 21–22. But Ms. Harris stated no knowledge of whether the Government *likewise* sought informal leave to exceed the page limit. Nonetheless, when Ms. Harris brought the excess pages to the Court's attention, the Court liberally granted Ms. Harris's request and admonished the Government to ensure it too sought leave of Court before departing from the specifications set by the Local Rules. *See* ECF No. 36.

But Ms. Harris's unprofessional conduct and "inability to conduct litigation properly" was just starting. *See* N.D. TEX. LOC. CRIM. R. 57.8(b)(2). Prior to the hearing on the Motion to Suppress, Ms. Harris filed unduly antagonistic and frivolous objections to the Government's evidence and exhibits for the hearing. *See* ECF No. 42. Ms. Harris's objections incorrectly invoked the federal rules of evidence—universally acknowledged to be inapplicable at suppression—and suggested that the Court's consideration of the full body of evidence in this case would "risk unfair prejudice by introducing emotionally charged content." *Id.* at 4. The Court issued an order reminding Ms. Harris of the applicable law, its authority to consider all applicable evidence, and her obligations to defend her client in a professional manner. *See* ECF No. 44. And the Court specifically warned Ms. Harris that her actions bordered conduct prohibited in Local Criminal Rule 57.8; *see also* ECF No. 44 at 3.

Next, the Court held a suppression hearing on February 12, 2025, liberally granting the Parties over four hours to present their evidence to the Court. ECF No. 46. The Court denied Defendant's Motion to Suppress on February 24, 2025. ECF No. 50.

Following the Court's denial of Defendant's Motion to Suppress, the Court entered an Amended Trial Scheduling Order setting Defendant's trial for Tuesday, April 1, 2025, and

stipulating all applicable pre-trial deadlines. ECF No. 52. The Order further stated that Defendant must file any plea agreement by Monday, March 24, 2025, at 5:00 p.m. *Id.*

But Ms. Harris failed to meet any of the pre-trial deadlines. Nor did Ms. Harris enter a plea agreement by the deadline stipulated in the Court's scheduling order. Ms. Harris belatedly joined the Government's Joint Motion to Continue *after* all deadlines passed. ECF No. 55. Thus, Defendant was effectively "missing in action" from when the Court entered the suppression order until Ms. Harris belatedly joined the Government's Joint Motion to Continue. Accordingly, the Court entered an order requiring Ms. Harris to "show cause" why she had failed to meet any pre-trial deadline, enter a plea agreement by the deadline, or alternatively timely notice the Court that she requested or required a continuance. ECF No. 54. Ms. Harris filed her Response to the Order to Show Cause on March 27, 2025. ECF No. 57.

### LEGAL STANDARD

Federal courts possess the inherent power to sanction attorneys. *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016). Exercising this authority requires a specific finding that the attorney acted in bad faith. *Id.* But when a court imposes sanctions pursuant to its local rules, no such finding is required. *In re Luttrell*, 749 F. App'x 281, 286 (5th Cir. 2018) (per curiam) (recognizing "there is no bad-faith requirement" for district court invoking its sanction authority under local rules, as opposed to its inherent sanction power). Here, Local Criminal Rule 57.8(b) provides that "[a] presiding judge, after giving opportunity to show cause to the contrary, may take any appropriate disciplinary action against a member of the bar for . . . conduct unbecoming a member of the bar . . . [or] failure to comply with any rule or order of this court . . . [or] failure to conduct litigation properly . . . ." This Court's March 24, 2025, Order to Show Cause (ECF No. 54) provided Ms. Harris notice and the opportunity to justify her conduct.

3

ANALYSIS

Although the foregoing progression of Ms. Harris's unprofessional and unbecoming conduct is extensive and likely also worthy of sanctions, the Court bases this order *solely* on Ms. Harris's complete disregard of the deadlines set forth by this Court in its Amended Scheduling Order and her failure to show good cause.

In her Response to the Court's Show Cause Order, Ms. Harris does not simply fail to show good cause. She underscores further violations of her duty to professionally and properly conduct litigation before this Court. Even worse, she attempts to blame her failure on the Government.

Specifically, Ms. Harris attributes her noncompliance to her *misreading* of the charging instruments. ECF No. 57 at 1. Ms. Harris stated she "was substituted into the case after the indictment was returned, and to counsel's knowledge, prior defense counsel was not provided with notice of the Government's intent to pursue a charge carrying a significantly higher mandatory minimum" than the charge cited in the original Complaint. *Id.* Ms. Harris then claims that the "Defense was thus deprived of an opportunity to engage in meaningful plea discussions based on the lower statutory range initially charged in the complaint." *Id.* And finally, Ms. Harris concludes that her "delay in responding to the Government's plea offer is not the result of willful neglect or disobedience of the Court's order, but instead arises from the complex procedural history and ongoing good faith efforts to reach a fair and informed resolution." *Id.* at 2.

But Ms. Harris's fundamental misunderstanding of charging instruments and her failure to familiarize herself with the indictment is neither the Government's fault nor good cause for her disregard of the Court's deadlines.

The Government has no obligation to flag or highlight the charges in the indictment. *See United States v. Davis*, 380 F.3d 821, 829 (5th Cir. 2004) (explaining that one of the two

4

primary functions of an indictment is to "provide[] the defendant notice of the crime charged, thereby allowing him to prepare a defense"). At all times, Ms. Harris had access to her client's indictment. Nor is the "procedural history" in this case "complex." Only one operative charging document—the original indictment—exists in this case. And Ms. Harris's client is the only defendant being prosecuted for the instant offense.[1] Furthermore, Ms. Harris had nearly five weeks following the Court's denial of Defendant's Motion to Suppress to discuss plea and trial options with her client. At no point during this time did Ms. Harris communicate her need for a continuance to this Court or otherwise inform the Court that she had encountered insuperable difficulties.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that sanctions in the form of a $500 penalty, payable to the Court, are appropriate to ensure that Ms. Harris complies with the Court's future orders or timely notices the Court of her need for a continuance. The fine must be paid no later than 30 days from today—April 30, 2025. The fine shall be paid to the U.S. District Clerk's Office, United States District Court, 205 SE 5th Avenue, Room 133, Amarillo, TX 79101-1559. Partial payments may be made until April 30, at which time the fine must be paid in full. Ms. Harris is further ordered to report this order of sanctions to State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 13287, Austin, Texas 78711.

**SO ORDERED.**

April __, 2025.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[1] Notably—despite Ms. Harris's emphasis on the complex nature of this case—neither party moved to declare this case complex under 18 U.S.C. § 3161(h)(7)(B)(ii). Nor would this case meet the statutory definition of "complex litigation." Only one defendant was charged in connection with the instant offense. And the original indictment remains the only operative charging document in this case, with minimal discovery.

5